UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

                Plaintiff,

v.

ELMER MINORIA NANQUILADA,

                Defendant.

No. CR08-323Z

ORDER

THIS MATTER comes before the Court on defendant's motion to suppress evidence, docket no. 17. In connection with his motion, defendant has requested an evidentiary hearing and oral argument. Having reviewed the motion and the opposition thereto, the Court declines to hold an evidentiary hearing and DENIES the motion.

**Background**

Defendant seeks to suppress *inter alia* evidence obtained during two different searches of two different vehicles. On January 17, 2008, defendant was driving a black Honda Accord when he was stopped by an officer because the car had illegal blue lights and a modified exhaust system. The officer subsequently learned that defendant had a suspended license and an outstanding arrest warrant. Defendant was arrested, searched, and placed into a police vehicle. During the course of the search of defendant's person, the officer discovered an empty handgun holster clipped to defendant's belt. Thereafter, a search of the vehicle was conducted, during which two firearms and a small quantity of methamphetamine

ORDER -1-

were discovered. Defendant was later charged in state court with unlawful possession of a firearm and unlawful possession of a controlled substance. On June 20, 2008, he failed to appear for a pretrial hearing, and a bench warrant issued for his arrest.

On June 30, 2008, U.S. deputy marshals observed defendant get into a grey Honda Accord and drive from an apartment complex in Kent to a nearby 7-11 store. Defendant went into the store and exited a few minutes later. According to the deputy marshals, defendant got into the grey Honda Accord and began to pull out of the parking lot, but his vehicle was purposefully blocked by the car in which the deputy marshals were sitting. After Kent police officers arrived at the scene, defendant was removed from the car and placed under arrest. In contrast, defendant alleges that he was arrested upon coming out of the 7-11, before he got back in the grey Honda Accord. The parties agree, however, that a search of defendant's person produced three credit cards and a Costco card bearing four different names, and that the search of the grey Honda Accord occurred after defendant was in the custody of the deputy marshals. The search of the vehicle revealed $730 of counterfeit currency, a significant quantity of methamphetamine, a small amount of marijuana, a digital scale, two stolen firearms, and a large amount of U.S. currency.

**Discussion**

An evidentiary hearing on a motion to suppress must be held only when "the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." <u>United States v. Walczak</u>, 783 F.2d 852, 857 (9th Cir. 1986). Defendant contends that the discrepancy between his and the deputy marshals' accounts of the June 2008 events mandates a hearing. His argument lacks merit. Defendant does not appear to contest the validity of his arrest on either occasion; in both January and June 2008, warrants for defendant's arrest were outstanding. Defendant also does not appear to dispute that, in January 2008, he was inside the car at issue when first contacted by police. With respect to

the June 2008 incident, contrary to defendant's argument, whether he was in the car or not at the time of his arrest is of no moment. The deputy marshals observed defendant driving the car and saw him exit the car and go into the 7-11. Regardless of whether he was in the car or coming out of the 7-11 when he was arrested, he was the type of "recent occupant" that ordinarily would justify a vehicle search incident to arrest. *See Thornton v. United States*, 541 U.S. 615, 622 (2004) ("while an arrestee's status as a 'recent occupant' may turn on his temporal or spatial relationship to the car at the time of the arrest and search, it certainly does not turn on whether he was inside or outside the car at the moment that the officer first initiated contact with him"). Thus, the factual dispute raised by defendant does not necessitate an evidentiary hearing.

The more interesting issue in this case is whether the two vehicle searches incident to arrest, which the parties agree occurred on both occasions after defendant was in custody, fall within the exception to the warrant requirement carved out by *Chimel v. California*, 395 U.S. 752 (1969), and its progeny. *Chimel* defined as an exception to the warrant requirement "the person" of an arrestee and the area immediately surrounding him or her. *Id.* at 763. The rationales for the exception are officer safety and preservation of evidence. *Id.* In a subsequent case, the Supreme Court crafted a bright-line rule concerning the scope of a search incident to arrest of a vehicle in which the arrestee had been a "recent occupant." *New York v. Belton*, 453 U.S. 454, 460 (1981). In *Belton*, the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.*

In *Thornton*, the Supreme Court clarified that the *Belton* rule applies "even when an officer does not make contact until the person arrested has left the vehicle." 541 U.S. at 617. In that case, an officer observed the petitioner driving a vehicle with a license that did not match its make and model, but before the officer could pull the petitioner over, the petitioner

drove into a lot, parked the car, and left the vehicle. *Id.* at 617-18. The officer pulled into the lot, saw the petitioner walking away from the vehicle, made contact with him, and subsequently arrested him and searched the car, discovering a firearm under the driver's seat. *Id.* at 618. Justice Rehnquist, writing for the majority, approved of the search, while Justice O'Connor, who concurred in part with Justice Rehnquist's opinion, wrote "separately to express [her] dissatisfaction with the state of the law in this area." *Id.* at 624 (O'Connor, J., concurring in part). Justice O'Connor expressed general agreement with Justice Scalia's alternative approach, but was reluctant to adopt it because neither the petitioner nor the Government had had "a chance to speak to its merit." *Id.* at 625; *see also id.* at 624 n.4.

Justice Scalia proposed limiting searches of vehicles incident to arrest to cases in which officers reasonably believe evidence relevant to the crime of arrest might be found in the vehicle. *Id.* at 632 (Scalia, J., concurring in the judgment). Because the petitioner in *Thornton* was arrested for a drug offense, marijuana and crack cocaine having been found in the petitioner's pocket upon a pat down for weapons, Justice Scalia concluded the search of the car was valid because it was based on a reasonable belief that additional contraband or similar evidence would be found therein. *Id.* Justice Stevens, with whom Justice Souter joined, dissented in *Thornton*, observing that the Court appeared "[u]nwilling to confine the *Belton* rule to the narrow class of cases it was designed to address," namely instances when a suspect was "seated in or driving an automobile at the time the law enforcement official approached," and was extending "*Belton's* reach without supplying any guidance for the future application of its swollen rule." *Id.* at 635, 636 (Stevens, J., dissenting).

The Supreme Court's discomfort with the scope of the search incident to arrest doctrine has culminated in its grant of a writ of certiorari in an Arizona case factually similar to, but yet distinguishable from, the one pending before this Court. *See Arizona v. Gant*, 216 Ariz. 1, 162 P.3d 640 (2007), *cert. granted*, 128 S. Ct. 1443 (2008) (oral argument heard Oct. 7, 2008). In *Gant*, the defendant was arrested after driving to a residence, parking, and

exiting the vehicle. 162 P.3d at 641. He was handcuffed and locked in the back of a patrol car while officers searched the passenger compartment of his car, thereby discovering a weapon and cocaine. *Id.* The Arizona Supreme Court concluded that the search was not a valid search incident to arrest, holding that when "based on the totality of the circumstances, an arrestee is secured and thus presents no reasonable risk to officer safety or the preservation of evidence, a search warrant must be obtained unless some other exception to the warrant requirement applies." *Id.* at 646. In *Gant*, the officers did not, independent of the arrest, have probable cause to search the car, in which the evidence and contraband was not in plain view, and therefore, the automobile exception to the warrant requirement did not validate the search. *Id.* Moreover, because the officers testified that they had had no intention of impounding the car, which was safely parked in a residential driveway, the search could not be characterized as an inventory search. *See id.*

In light of *Gant*, the Court does not view the search incident to arrest jurisprudence as being as clear or "controlling" as the Government contends in this matter. The Court therefore does not rely on the search incident to arrest doctrine in evaluating the validity of the searches at issue here. Instead, the Court has examined whether the searches at issue were justified by the automobile exception to the warrant requirement, and has concluded that the searches were valid. Under the automobile exception, a vehicle may be searched without a warrant so long as officers have "probable cause to believe that the car contains articles that the officers are entitled to seize." *Chambers v. Maroney*, 399 U.S. 42, 48 (1970) (citing *Carroll v. United States*, 267 U.S. 132 (1925)). The case before this Court is distinguishable from *Gant* in that the officers here had probable cause to search the respective vehicles.[1] In January 2008, upon a legitimate search of defendant's person

---

[1] This case is also distinguishable from *Gant* because the vehicles at issue here were on the roadway and in a 7-11 store lot, respectively, when defendant was arrested, and presumably would have been impounded and inventoried. The Court, however, has not relied upon a theory of inevitable discovery pursuant to an inventory search because the Government did not include in its papers sufficient evidence concerning the protocol or routine procedures of the police agencies involved. In light of the undisputed evidence

ORDER -5-

incident to his arrest, the officer discovered an empty handgun holster.  The officer was aware that defendant had a prior felony conviction and that defendant's possession of a firearm would be a crime.  Based on the empty handgun holster and defendant's status as a felon, the officer had probable cause to search the vehicle.  Likewise, in June 2008, based on the fruits of a valid search incident to arrest of defendant's person, namely stolen credit cards, the officers had probable cause to believe defendant's vehicle would contain similar or related items that they were entitled to seize.  Given the validity of the vehicle searches, defendant's challenges to the search warrants obtained using evidence discovered inside the cars have no merit.  Defendant's motion to suppress evidence is therefore DENIED.

IT IS SO ORDERED.

DATED this 13th day of January, 2009.

_____
Thomas S. Zilly
United States District Judge

establishing probable cause to support the searches under the automobile exception, the Court has declined, for reasons of judicial economy, to hold an evidentiary hearing concerning the applicability of the inventory search doctrine.

ORDER  -6-